**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**KATHLEEN FOLEY,**
*individually and on behalf*
*of all others similarly situated*,

     **Plaintiff,**

**v.**                           **NO. 24-CV-1303 (KPF)**

**IRBSEARCH, LLC,**

     **Defendant.**

_____

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S PRE-ANSWER MOTION TO DISMISS**

Brian L. Bromberg
Bromberg Law Office, P.C.
352 Rutland Road, #1
Brooklyn, NY 11225
Tel: 212.248.7906 | Fax: 212.248.7908
Email: brian@bromberglawoffice.com

Leonard A. Bennett
    (*pro hac vice forthcoming*)
Craig C. Marchiando
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
       craig@clalegal.com

Brandon J. Hill (*pro hac vice*)
Wenzel, Fenton, Cabassa, P.A.
1110 N. Florida Ave, Suite 300
Tampa, FL 33602
Tel: (813) 337-7992
Fax: (813) 229-8712
Email: bhill@wfclaw.com

## Table of Contents

FACTUAL BACKGROUND ........................................................................................................... 1

LEGAL STANDARDS ................................................................................................................ 2

   **I.**   Indispensable Parties Under Federal Rule of Civil Procedure 19 ....................... 2

   **II.**   Rule 12(b)(6) Pleading Standards ...................................................................... 4

   **III.**   The Communications Decency Act ..................................................................... 4

ARGUMENT AND AUTHORITIES ............................................................................................. 5

   I.   On Point Investigations Is Not An Indispensable Party ..................................... 5

      A.   Nothing About Plaintiff's Claims Against IRB Involve Or Implicate On Point .......... 6

      B.   IRB's Contractual Relationship With On Point Has No Bearing On How Plaintiff's Claims Should Turn Out ........................................................................................ 7

      C.   IRB Has Not Shown That Dismissal Is Appropriate Under Rule 19(b)...................... 8

   II.   IRB's Argument It Is Not A CRA Does Not Deprive The Court Of Jurisdiction ......... 10

   III.   Plaintiff Pleads Claims That Satisfy Rule 12(b)(6)........................................... 12

      A.   Plaintiff Sufficiently Pleads That IRB Issues Consumer Reports, Enough To Satisfy Rule 12(b)(6)................................................................................................... 13

      B.   Plaintiff Sufficiently Pleads That IRB Is A Consumer Reporting Agency, Again Satisfying Rule 12(b)(6) ............................................................................... 16

   IV.   The Communications Decency Act Does Not Shield CRAs Like Defendant From FCRA Liability ................................................................................................. 18

      A.   IRB Has Not Shown It Is A Provider Of An Interactive Computer Service ............. 18

      B.   IRB Has Not Shown That The Information In IRB's Reports Is Provided By An Information Content Provider Other Than IRB .................................................... 20

      C.   Most Of Plaintiff's Claims Do Not Treat IRB As The Publisher Or Speaker........... 22

      D.   IRB Has Not Shown, Nor Can It Show, That It Has Met Other Obligations The CDA Imposes Upon Interactive Computer Services ................................................... 23

CONCLUSION........................................................................................................................ 24

## Table of Authorities

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................... *passim*

*Barua v. Barua*,
    No. 14-cv-5107 MKB, 2015 WL 4925028 (E.D.N.Y. Aug. 18, 2015) ....................................4

*Bell Atlantic Co. v. Twombly*,
    550 U.S. 544 (2007) ................................................................4, 12, 16, 17

*Bunting v. RK McKnight Rd., LLC*,
    No. 2:23-cv-850, 2023 WL 5353427 (W.D. Pa. Aug. 21, 2023) ..............................................8

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008) ................................................................10

*Dechert v. The Bank of N.Y. Mellon*,
    No. 23-cv-7625 (JPO), 2024 WL 3496855 (S.D.N.Y. July 22, 2024) ......................................2

*Enemigo Ltd. v. Trinity Beverage Grp., LLC*,
    No. 22 CIV. 9794 (NRB), 2024 WL 3104803 (S.D.N.Y. June 24, 2024) ..............................3

*Finlay v. MyLife.com, Inc.*,
    525 F. Supp. 3d 969 (D. Minn. 2021) ....................................................14, 15, 16, 17

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) ................................................................5, 20, 22

*Forrest v. Meta Platforms, Inc.*,
    No. 22-cv-03699-PCP, 2024 WL 3024642 (N.D. Cal. June 17, 2024) ...................................19

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir.1985) ................................................................4

*Goolden v. Wardak*,
    No. 1:19-cv-06257, 2024 WL 3794413 (S.D.N.Y. Aug. 13, 2024) ..........................................13

*Henderson v. Source for Public Data, L.P.*,
    53 F.4th 110 (4th Cir. 2022) ................................................................18, 20, 23

*Herrick v. Grindr LLC*,
    765 F. App'x 586 (2d Cir. 2019) ................................................................5

*Homeaway.com, Inc. v. City of Santa Monica*,
No. 2:16-cv-06641 ODW (AFM), 2018 WL 1281772 (C.D. Cal. Mar. 9, 2018)..................23

*Inland Nw. Renal Care Grp., LLC v. WebTPA Emp. Servs., LLC*,
No. C19-1758-JCC-SKV, 2022 WL 18999836 (W.D. Wash. Dec. 29, 2022),
*report & recommendation adopted*, No. C19-1758-JCC-SKV, 2023 WL
2042174 (W.D. Wash. Feb. 16, 2023) ......................................................................................7

*Kasselakis v. Tiptree, Inc.*,
No. 1:23-cv-2756-GHW, 2024 WL 3252632 (S.D.N.Y. July 1, 2024)..............................3, 10

*Keiler v. Harlequin Ent.*,
751 F. 3d 64 (2d Cir. 2014)........................................................................................................4

*Kidd v. Thomson Reuters Corp.*,
925 F.3d 99 (2d Cir. 2019).......................................................................................11, 13, 14

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*,
419 F.3d 216 (3d Cir. 2005)......................................................................................................8

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013)......................................................................................................3

*McCarthy v. Dun & Bradstreet Corp.*,
482 F. 3d 184 (2d Cir. 2007).....................................................................................12, 13, 14

*Peregrine Myanmar Ltd. v. Segal*,
89 F.3d 41 (2d Cir. 1996)..........................................................................................................3

*Pettus v. Servicing Co., LLC*,
No. 3:15-cv-479-HEH, 2015 WL 9255331 (E.D. Va. Dec. 17, 2015) ......................................8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)................................................................................................................11

*Stevenson v. New York State Dep't of Corr. & Cmty. Supervision*,
No. 1:21-cv-355, 2022 WL 179768 (W.D.N.Y. Jan. 20, 2022) ................................................5

*Tierney v. Advocate Health & Hospitals Corp.*,
797 F.3d 449 (7th Cir. 2015) ...........................................................................................16, 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...........................................................................................................10, 11

*USA Roof Masters, LLC v. Liberty Mut. Mid Atl. Ins. Co.*,
No. CV 22-1813, 2024 WL 896570 (E.D. Pa. Feb. 29, 2024), *reconsideration
denied*, No. CV 22-1813, 2024 WL 1699563 (E.D. Pa. Mar. 20, 2024) ..................................8

*Zabriskie v. Federal National Mortgage Assoc.*,
   940 F.3d 1022 (9th Cir. 2019) ...................................................................12, 13, 14

**Statutes**

Communications Decency Act, 47 U.S.C. § 230................................................ *passim*

Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x....................................... *passim*

**Other Authorities**

Fed.R.Civ.P. 12(b)(6)........................................................................................ *passim*

Fed. R. Civ. P. 12(b)(7) .................................................................................................2

Fed.R.Civ.P. 14.................................................................................................................8

Fed.R.Civ.P. 19................................................................................................. *passim*

https://www.merriam-webster.com/dictionary/creation ..........................................20

U.S. Constitution Article III...............................................................................10, 11, 12

Plaintiff, Kathleen Foley, individually and on behalf of all other similarly situated individuals, by Counsel, opposes the Pre-Answer Motion to Dismiss of IRBsearch, LLC ("Defendant" or "IRB") (ECF 18). For the reasons discussed below, the Court should deny the Motion.

### FACTUAL BACKGROUND

Plaintiff applied to work with a law firm, Pomerantz, LLP, in 2023. (ECF 15 ¶¶ 68, 75.) Pomerantz obtained a consumer report about Plaintiff from IRB, and that report was rife with stale and inaccurate information. (*Id.* ¶¶ 68, 80.) IRB knew, at the time it issued the report, that it was for employment purposes, making it governed by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x. (*Id.* ¶ 79.) IRB did not provide Plaintiff with contemporaneous notice that it was furnishing the report to Pomerantz, and IRB does not have in place strict procedures designed to ensure the public-record information it reports is complete and up-to-date. (*Id.* ¶¶ 90–91.) The inaccurate and stale information painted Plaintiff as less financially responsible than she truly is, as it included a seven-year-old eviction judgment that was not actually an eviction or a judgment, a 19-year-old bankruptcy, and a 25-year-old civil judgment that Plaintiff had satisfied. (*Id.* ¶¶ 81–84.) None of this information should have been included because it predates the report by more than seven years. Because of this erroneous and obsolete information, Pomerantz did not hire Plaintiff, leaving her jobless and humiliated. (*Id.* ¶¶ 85–86.)

Hoping to learn more about the source of the inaccurate and stale information, Plaintiff wrote to IRB and requested her full file disclosure, as permitted by the FCRA. (*Id.* ¶ 87.) Rather than meeting the FCRA's requirement that it provide Plaintiff with all information it has about her and the sources of that information, 15 U.S.C. § 1681g, IRB responded:

> We have reviewed your requests for a Full File Disclosure, as well as the request for a list of all companies that requested or received your report. Our company policies unfortunately prohibit the dissemination of this information and we will not be able to provide you with any type of report or list at this time.

(*Id.* ¶ 87.) Nothing in § 1681g permits such a response.

Though IRB argues otherwise in its Motion, Plaintiff has pleaded that IRB is a consumer reporting agency ("CRA") governed by the FCRA. (*Id.* ¶¶ 27–60.) Plaintiff has alleged IRB meets all of the elements of the FCRA's definition of a CRA, 15 U.S.C. § 1681a(f). (ECF 15 ¶¶ 27–60.) IRB hopes to overcome those well-pleaded allegations with impermissible evidence at the Rule 12(b)(6) posture but, as set forth more-fully below, the Court should not permit it.

Because of IRB's multiple failures in creating the report about Plaintiff and responding to her request for her file disclosure, Plaintiff brings nationwide class claims against IRB under §§ 1681c, 1681k, and 1681g of the FCRA. (ECF 15 ¶¶ 89–92.) She also presses individual claims under § 1681e(b) of the FCRA, and an alternative claim for common-law defamation. (*Id.* ¶¶ 93, 159–68.)

LEGAL STANDARDS

## I.    Indispensable Parties Under Federal Rule of Civil Procedure 19

The Court may dismiss a case for the "failure to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). The Court's analysis under Rule 19 is two steps. First, the Court must determine whether another party is truly required under Rule 19(a). *Dechert v. The Bank of N.Y. Mellon*, No. 23-cv-7625 (JPO), 2024 WL 3496855, at *2 (S.D.N.Y. July 22, 2024). A party is required if, without it, "'the court cannot accord complete relief among existing parties.'" *Id.* (quoting FED. R. CIV. P. 19(a)(1)(A)). The Court can provide "complete relief" without an additional party "when, among other things 'nothing in the district court's statements or final judgment requires the [absent

2

party] to do anything or change any of its positions.'" *Kasselakis v. Tiptree, Inc*., No. 1:23-cv-2756-GHW, 2024 WL 3252632, at *12 (S.D.N.Y. July 1, 2024) (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996)) (alteration in original). On the other hand, if the absent party will have to do something to afford a party complete relief, such as be subject to injunctive relief, that party is likely to be necessary. *Id.*

Another party may also be required under Rule 19(a) if it has an interest in the case such that its absence "'such that its absence would 'impair or impede [its] ability to protect the interest' or 'leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.'" *Id.* (quoting FED. R. CIV. P. 19(a)(1)(B), alteration in original). If the Court concludes that an additional party is required, Rule in demands that it order the joinder of that party *Id.*

The Second Circuit has recognized that the plaintiff's choice of parties and forum gives way to Rule 19 only in "exceptional circumstances." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 131–33 (2d Cir. 2013). That conclusion makes sense, because to be indispensable "[t]he absent party must 'claim an interest' in the subject matter of the litigation[, and] [a] third party may not claim it on the absent party's behalf." *Kasselakis*, 2024 WL 3252632, at *12 (quoting *Peregrine Myanmar*, 89 F.3d at 49. The Second Circuit also reminds that:

> It is not enough under Rule 19(a)(2)(i) for a third party to have an interest, even a very strong interest, in the litigation. Nor is it enough for a third party to be adversely affected by the outcome of the litigation. Rather, necessary parties under Rule 19(a)(2)(i) are only those parties whose ability to protect their interests would be impaired ***because of*** that party's absence from the litigation.

*Peregrine Myanmar*, 89 F.3d at 49 (emphasis in original). The weight to be given the considerations of the Rule 19 analysis is left to the Court's discretion. *Enemigo Ltd. v. Trinity*

*Beverage Grp., LLC*, No. 22 CIV. 9794 (NRB), 2024 WL 3104803, at \*4 (S.D.N.Y. June 24, 2024).

## II.    Rule 12(b)(6) Pleading Standards

To survive a motion to dismiss, a complaint must contain enough factual matter that, if taken as true, states a claim to relief that is plausible on its face. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a motion to dismiss, "a court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Barua v. Barua*, No. 14-cv-5107 MKB, 2015 WL 4925028, at \*2 (E.D.N.Y. Aug. 18, 2015) (internal quotation marks and citation omitted). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). As the plaintiff is operating without information normally obtained through discovery, she is not obligated to provide extensive or complete factual allegations. *See Keiler v. Harlequin Ent.*, 751 F. 3d 64, 68 (2d Cir. 2014) (finding that a complaint need not contain detailed or elaborate factual allegations, and instead requires only allegations sufficient to raise entitlement to relief above a speculative level).

## III.    The Communications Decency Act

The Communications Decency Act, 47 U.S.C. § 230, states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The Act "shields a defendant from civil liability when: (1) it is a 'provider or user of an interactive computer service,'

as defined by § 230(f)(2); (2) the plaintiff's claims 'treat[ ]' the defendant as the 'publisher or speaker' of information [ ]; and (3) that information is 'provided by' an 'information content provider,' [ ] other than the defendant interactive computer service." *Force v. Facebook, Inc.*, 934 F.3d 53, 63–64 (2d Cir. 2019) (citations omitted).

The majority of federal circuits, including the Second, "have interpreted [§ 230(c)] to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Herrick v. Grindr LLC*, 765 F. App'x 586, 589 (2d Cir. 2019) (summary order; quotations omitted). The Second Circuit has also held that § 230 establishes an affirmative defense to liability, meaning IRB bears the burden of establishing all elements and Plaintiff faces no burden in the analysis. *See Force*, 934 F.3d at 57 (referring to § 230(1) as an "affirmative defense"). In the context of a Rule 12(b)(6) motion like IRB presses here, IRB must make that showing without referring to materials outside Plaintiff's Amended Complaint. *Stevenson v. New York State Dep't of Corr. & Cmty. Supervision*, No. 1:21-cv-355, 2022 WL 179768, at *18 (W.D.N.Y. Jan. 20, 2022).

## ARGUMENT AND AUTHORITIES

## I.    On Point Investigations Is Not An Indispensable Party

IRB claims that On Point Investigations, a party of whom Plaintiff had no knowledge before filing this lawsuit, is somehow indispensable under Rule 19(a). (ECF 18-14 at 4.) This is so, IRB argues, because it is On Point, not IRB, that provided the inaccurate IRB report to Plaintiff's potential employer, Pomerantz. (*Id.* at 5.) IRB further argues that because its contract with On Point requires On Point to indemnify IRB for misuse of IRB's services, continuing without On Point impairs its ability to protect its interests. (*Id.* at 6.) Neither argument holds water.

A.      **Nothing About Plaintiff's Claims Against IRB Involve Or Implicate On Point**

IRB launches its Rule 19 arguments without providing the Court any context at all, probably because doing so reveals the flaws in its Rule 19 arguments. All of Plaintiff's claims revolve around things IRB did or did not do, and do not implicate On Point at all. In other words, On Point's presence as the conduit through which IRB's report was presented to Pomerantz has no impact at all on Plaintiff's claims. Likewise, as to the relief Plaintiff seeks, as it is all predicated on IRB's conduct or omissions. On Point does not matter at all for purposes of litigating those claims or providing the relief Plaintiff seeks. A short discussion of the claims confirms as much:

- **Violations of § 1681g.** This claim does not implicate On Point. It is directed at just IRB, alleging the failure to provide Plaintiff with her full file disclosure on request violates this Section of the FCRA. (ECF 15 ¶¶ 108, 120–16.) This is a textbook violation of the FCRA, and does not depend at all on the involvement of On Point because it is a direct communication between Plaintiff and IRB, and alleges a shortcoming by IRB. 15 U.S.C. § 1681g.

- **Violations of § 1681k(a)(1).** This claim alleges IRB failed to provide Plaintiff with "at the time" notice when it furnished her report to Pomerantz. (ECF 15 ¶¶109, 134–30.) The involvement of On Point in the process does not change anything, as this notice obligation attaches even if IRB provides an employment-purposed consumer report to someone who is not the ultimate user. 15 U.S.C. § 1681k(a)(1).

- **Violations of § 1681c(a).** Here, Plaintiff alleges IRB furnished information about her that Section 1681c(a) prohibits reporting because of its age. (ECF 15 ¶¶ 110, 143–46.) Again, this claim has nothing to do with On Point—it focuses exclusively on failures of IRB to meet the FCRA's strictures on keeping stale information off consumer reports. 15 U.S.C. § 1681c(a).

- **Violations of § 1681e(b).** Finally, Plaintiff pleads a cornerstone claim for inaccuracy under the FCRA. This claim is directed again to just IRB's conduct, as the FCRA demands that a CRA like IRB have in place reasonable procedures designed to assure the maximum possible accuracy of the information it reports. 15 U.S.C. § 1681e(b). Regardless of the ultimate user of the report, IRB must still have accuracy procedures in place. *Id.* Plaintiff alleges that IRB does not, and it does not matter whether On Point is involved somewhere down the line.

Considering these claims against the relationship IRB claims to have with On Point confirms that On Point is not a necessary party. The claims are aimed exclusively at acts or omissions by IRB—not providing information it should have, not giving notice as the Act requires, furnishing stale information, and publishing inaccurate information—without regard to who the recipient of the report might be. IRB does not discuss the substance of Plaintiff's claims at all, let alone show how the Court might be hindered in providing Plaintiff and putative class members relief under those claims if On Point is not joined. That is because there are no such problems here, confirming On Point is not a necessary party under Rule 19(a).

**B.    IRB's Contractual Relationship With On Point Has No Bearing On How Plaintiff's Claims Should Turn Out**

IRB's centerpiece Rule 19 argument discusses its contractual relationship with On Point and how On Point may be responsible for indemnifying IRB for some of the violations Plaintiff alleges. (ECF 18-14 at 5–7.) IRB notably cites no authority for this premise, likely because any applicable caselaw comes down in Plaintiff's favor. *See, e.g.*, *Inland Nw. Renal Care Grp., LLC v. WebTPA Emp. Servs., LLC*, No. C19-1758-JCC-SKV, 2022 WL 18999836, at *9 (W.D. Wash. Dec. 29, 2022), *report & recommendation adopted*, No. C19-1758-JCC-SKV, 2023 WL 2042174 (W.D. Wash. Feb. 16, 2023) ("WebTPA does not cite to, nor can the Court discern, any case where an absent party that may be obliged to indemnify an existing party was found indispensable under Rule 19 on that basis alone."). All IRB really argues is that "the absence of On Point will impair their ability to protect its interests, given that it is required to defend and indemnify IRB for claims arising from their use of IRB services." (ECF 18-14 at 6.) That is simply not enough.

IRB never explains how its contractual relationship with On Point demands that On Point be joined here under Rule 19. Whatever contractual provisions between them that may ultimately

apply to any results here, and what On Point may have to pay IRB can be resolved among them by the terms of their contract. IRB has not clearly explained how its relationship with On Point means that On Point *must* be joined to this litigation.[1] By doing little more than mentioning the possibility of contractual indemnification, IRB has not shown that On Point has any meaningful interest in this case that demands its inclusion. *See Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005) ("Under Fed.R.Civ.P. 19(a)(2), a party is only 'necessary' if it has a legally protected interest, and not merely a financial interest, in the action."); *see also USA Roof Masters, LLC v. Liberty Mut. Mid Atl. Ins. Co.*, No. CV 22-1813, 2024 WL 896570, at *3 (E.D. Pa. Feb. 29, 2024), *reconsideration denied*, No. CV 22-1813, 2024 WL 1699563 (E.D. Pa. Mar. 20, 2024) ("While pursuit of a claim for contribution or indemnification is a less convenient remedy for a defendant, that inconvenience does not render an absent insurer indispensable."). This failure is more-than enough for the Court to deny IRB's Motion on this point. *See Pettus v. Servicing Co., LLC*, No. 3:15-cv-479-HEH, 2015 WL 9255331, at *3 (E.D. Va. Dec. 17, 2015) (declining to grant Rule 19 relief in FCRA case, holding that "[c]omplicating or tangentially affecting one's business does not rise to the level of impairing one's ability to protect one's interest, or subjecting one to multiple or inconsistent judgments").

### C.    IRB Has Not Shown That Dismissal Is Appropriate Under Rule 19(b)

While IRB's Motion fails because it has not shown that On Point is necessary, *Bunting v. RK McKnight Rd., LLC*, No. 2:23-cv-850, 2023 WL 5353427, at *4 (W.D. Pa. Aug. 21, 2023), even assuming the Court reaches the Rule 19(b) analysis, IRB still falls short. For that dismissal inquiry, the Court considers multiple factors set out in Rule 19(b). FED. R. CIV. P. 19(b). IRB does

---

[1] If anything, IRB's arguments sound more in the vein of Rule 14, Third-Party Practice, than that On Point is indispensable under Rule 19.

not engage in an analysis of those factors at all, however, noting instead the alternative consideration that "[i]f it is determined that a party is 'required' pursuant to FRCP 19(a), but joinder is not feasible, 'the court must then assess whether in equity and good conscience the action should proceed among the parties before it or should be dismissed because the absent party is 'indispensable' under FRCP 19(b).'" (ECF 18-14 at 4 (quoting *WM Int'l, Inc. v. 99 Ranch Market #601*, 329 F.R.D. 491, 496 (E.D.N.Y. 2019)).) It therefore appears that IRB admits On Point cannot be joined here, so IRB must appeal to the Court's equity and good conscience for its Motion to succeed. Even there, IRB's efforts fail.

IRB argues that equity and good conscience requires the inclusion of On Point because "IRB has compelling claims against On Point for indemnification, defense costs, and breach of contract which it will be prevented from pursuing if this case continues in the absence of On Point." (ECF 18-14 at 6–7.) IRB also points to contractual requirements like venue and choice of law, and ends with a statement about undue prejudice should On Point be excluded. (*Id.* at 7.)

None of this is pertinent, however, because it all relates to an agreement between IRB and On Point, which has no bearing whatsoever on Plaintiff, her claims, or anything that is to be decided in this case. As discussed above, Plaintiff's claims are all directed at conduct or omissions by IRB, and none of those claims or the relief the Court may grant involves On Point. And IRB has not cogently explained how On Point's attendance or absence impacts the relief Plaintiff seeks or the Court's ability to grant it with the case left as-is. (ECF 18-14 at 5–7.) The lack of genuine substance in IRB's analysis echoes why courts in this Circuit disfavor dismissals for lack of joinder:

> "'Federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result.'" "Rule 19 is about

> protecting absent persons from unfair prejudice—it is not about giving a named defendant veto power over the plaintiff's chosen forum." "'[V]ery few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible.'"

*Kasselakis*, 2024 WL 3252632, at *13 (citations omitted, alteration in original). IRB comes nowhere near meeting these standards, and cites no case holding in its favor, confirming Rule 19 dismissal is inappropriate.

## II.    IRB's Argument It Is Not A CRA Does Not Deprive The Court Of Jurisdiction

IRB appears to be claiming that since it does not view itself as being a CRA within the meaning of the FCRA, this somehow deprives the Court of jurisdiction under Article III of the U.S. Constitution. But IRB is conflating the issue of whether a federal court has jurisdiction under Article III with the issue of whether IRB is liable under the FCRA. Jurisdiction is based on an entirely separate body of case law from that cited by IRB. "Article III restricts federal courts to the resolution of cases and controversies." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (citation omitted). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Concrete harms can be "tangible"—such as physical or financial harm—or "intangible." *Id*. at 2204. But a statutory violation alone does not confer standing; rather, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. at 2205 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

Here, Plaintiff has alleged an injury-in-fact caused by IRB. That is, IRB violated the FCRA by providing a consumer report to a law firm at which Plaintiff applied for work (ECF 15 ¶¶ 68,

75), that the report was rife with stale and inaccurate information (*id.* ¶¶ 68, 80), that IRB knew, at the time it issued the report, that it was for employment purposes (*Id.* ¶ 79), that IRB did not provide Plaintiff with contemporaneous notice that it was furnishing the report to the law firm, and that IRB did not have in place strict procedures designed to ensure the public-record information it reported is complete and up-to-date (*id.* ¶¶ 90–91). The inaccurate and stale information painted Plaintiff as less financially responsible than she truly is and none of the information should have been included, because it predated the report by more than seven years. (*Id.* ¶¶ 81–84.) Because of this erroneous and obsolete information, the law firm did not hire Plaintiff, leaving her jobless and humiliated (*Id.* ¶¶ 85–86.) Afterwards, IRB refused to provide Plaintiff with her full file disclosure (*Id.* ¶ 87.) This is a quintessential statutory tort, the violation of which—like the common-law tort of defamation—caused Plaintiff actual monetary damages and emotional distress from the refusal by the law firm to hire her. IRB does not challenge these realities as falling short of Article III injury.

One would think that in arguing a lack of Article III standing, IRB would cite the leading U.S. Supreme Court cases of *TransUnion* and *Spokeo*, both of which examine that standard against FCRA violations, but IRB does not appear to grasp the difference between a federal court having Article III jurisdiction versus a court finding that a plaintiff has not stated a claim for relief under Rule 12(b)(6). IRB's entire standing argument consists of claiming, based on documents that are outside of the four corners of the Amended Complaint, that the Court does not have jurisdiction because IRB claims that it is not a CRA. If that is all anyone had to do to deprive the Court of jurisdiction, no FCRA case would ever proceed. That is not, however, an argument that goes to standing—that is an argument that goes to liability. This becomes even more apparent because the two cases IRB cites for its lack-of-standing claim, *Kidd v. Thomson Reuters Corp.*, 925 F.3d 99

(2d Cir. 2019), and *Zabriskie v. Federal National Mortgage Assoc.*, 940 F.3d 1022 (9th Cir. 2019), were decided not on the basis of Article III standing or even on a 12(b)(6) motion to dismiss— they were decided only after the completion of fact discovery, based on summary-judgment findings that the defendants did not fall within the statutory definition of CRA. In sum, much as IRB would apparently like to graft its claim that it is not a CRA onto a claim that Plaintiff lacks Article III standing, there is no basis for doing so. And IRB provides none.

### III.    Plaintiff Pleads Claims That Satisfy Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 191 (2d Cir. 2007). Furthermore, when "reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, [courts] accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *Id.*

Ignoring this long-established pleading standard, IRB's Motion seeks dismissal by arguing that the allegations in Plaintiff's Amended Complaint somehow fail to satisfy *Twombly* and *Iqbal*. To make this argument, IRB relies on two equally flawed points. Specifically, IRB argues Plaintiff's Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because it is: based on the false premise that (1) "Defendant is a consumer reporting agency ('CRA') that issues 'consumer reports'"; and (2) "is governed by the Fair Credit Reporting Act." Both of IRB's arguments fail. Plaintiff's Amended Complaint contains allegations sufficiently establishing that IRB is a CRA that does, in fact, issue consumer reports. As such, it is governed by the FCRA. Ignoring *Iqbal*, IRB claims that the Court should not accept Plaintiff's allegations as true, because they are "mere conclusory statements." (ECF 18-14 at 14 (quoting *Iqbal*, 556 U.S. at 663).) IRB's argument falls flat and, in fact, illustrates that IRB failed to properly apply *Iqbal* and *Twombly* to

the allegations contained in the Amended Complaint.  Ironically, IRB simply "concludes," without proper analysis, that Plaintiff's allegations are "conclusory." IRB is wrong.

As the Supreme Court explained in *Iqbal*, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity . . .."  556 U.S. at 664.  In the instant matter, Plaintiff's Amended Complaint provides sufficient factual allegations—which must be accepted as true—regarding, both: (i) IRB's status as a CRA and (ii) the fact that IRB issues consumer reports. *See McCarthy*, 482 F. 3d at 191 (stating that when reviewing a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true).

A.    **Plaintiff Sufficiently Pleads That IRB Issues Consumer Reports, Enough To Satisfy Rule 12(b)(6)**

First, IRB contends that its reports are not "consumer reports." (ECF 18-14 at 19.) In an attempt to support this argument, IRB places reliance on *Kidd,* 925 F.3d at 105, which found that certain steps taken by Thomas Reuters established a lack of intent to furnish reports for FCRA purposes and "therefore its reports did not constitute 'consumer reports.'" (ECF 18-14 at 19).  IRB also relies on *Zabriskie*, 940 F.3d at 1027, in which the Ninth Circuit held that the FCRA only applies to entities that *intend* to provide consumer reports. Intent, of course, is a question that is ill-suited for resolution even on summary judgment, let alone a motion to dismiss. *Goolden v. Wardak*, No. 1:19-cv-06257, 2024 WL 3794413, at *3 (S.D.N.Y. Aug. 13, 2024). Despite this reality, IRB argues that it took steps to show a lack of intent to furnish consumer reports for "FCRA-regulated purposes" and, therefore, its consumer reports should not actually be considered "consumer reports" under the FCRA.  (ECF 18-14 at 19); *Kidd,* 299 F. Supp.3d at 105. This argument by IRB fails for multiple reasons.

First, in referencing the certain "steps" that IRB purports to have taken, which it claims show a lack of intent to furnish reports for an FCRA-regulated purpose, IRB moves entirely beyond the confines of the four corners of the Amended Complaint. For this reason alone, its Rule 12(b)(6) dismissal argument fails. *See McCarthy*, 482 F. 3d at 191 (holding that review of a Rule 12(b)(6) motion is generally limited to the four corners of the complaint).

Second, *Kidd* and *Zabriskie* are inapplicable here. Both were decided at the summary judgment stage, not at the pleading stage. Thus, *Kidd* and *Zabriskie* were decided based on an entirely different standard of review, and only after the parties had already engaged in fact discovery. *See Finlay v. MyLife.com, Inc.,* 525 F. Supp. 3d 969, 980 (D. Minn. 2021) (finding that when assessing a 12(b)(6) motion to dismiss, "reliance on *Kidd* and *Zabriskie* are premature. Both *Kidd* and *Zabriskie* were decided at summary judgment . . ..". Unlike in *Kidd* and *Zabriskie*, in the instant matter, the Court is confined to consideration of the allegations found within the four corners of the Amended Complaint, which it must accept as true. *See McCarthy*, 482 F. 3d at 191.

Contrary to IRB's Motion, Plaintiff's Amended Complaint contains a multitude of plausible factual allegations which sufficiently support Plaintiff's characterization of IRB's report as a "consumer report." As the Court in *Finlay,* 525 F.Supp.3d at 979 explained when denying a similar motion to dismiss:

> The FCRA defines a 'consumer report' as: any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness [creditworthiness], credit standing, credit capacity, **character**, **general reputation**, **personal characteristics**, or **mode of living** which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>
> (A)    Credit or insurance to be used primarily for personal, family or household purposes;
>
> (B)    *Employment purposes*; or

> (C)    Any other purpose authorized under section 604 [15 U.S.C.
> § 1681b]
>
> 15 U.S.C. § 1681a(d)(1). The term 'employment purposes' under §
> 1681a(D)(1)(B) means a report '*used for the purpose of evaluating
> a consumer for employment*, promotion, reassignment or retention
> as an employee.

(emphasis added).

Plaintiff's Amended Complaint contains allegations—which must be accepted as true—

that clearly define IRB's report as a consumer report, pursuant to the FCRA's very own definition

of a consumer report:

> 21.  Defendant obtains consumer information bearing on consumers'
> *character, general reputation, personal characteristics and mode of
> living* from a myriad of publicly available sources such as criminal and
> traffic records, social security number information, sex offender
> registries, etc.
>
> 22.  After acquiring consumer information from its sources, Defendant
> regularly assembles that information into a report, which it then sells to
> third parties. In this case, *Defendant sold such a report to Pomerantz,
> LLP, which was considering Plaintiff for employment* as a legal
> assistant.
>
> 23.  Pomerantz *used the report* that contained the information from
> Defendant *for an employment purpose*, to refuse to hire Plaintiff.

(ECF 15 ¶¶ 21–23 (emphasis added).) While IRB's Motion focuses just on these paragraphs, which

are enough to pass Rule 12(b)(6) muster, there is a great deal more. In paragraphs 39 through 60,

Plaintiff provides detailed factual points that underpin the allegations that IRB sells consumer

reports. (*Id.* ¶¶ 39–60.)

In comparing Plaintiff's allegations—accepted as true—contained in her Amended

Complaint to the FCRA's definition of a consumer report, as set forth in *Finlay*, it is clear that

Plaintiff has sufficiently alleged that IRB issues "consumer reports." Similarly, in *Finlay*, the

plaintiff had alleged that MyLife's reports contained "a variety of personal information . . . to calculate a 'Reputation Score,'" that is expected to be used for evaluating employment eligibility. 525 F. Supp. 3d at 980.  Just as the court in *Finlay* found that the plaintiff had adequately alleged that the defendant MyLife provided consumer reports, this Court should find that Plaintiff has plausibly alleged that IRB issues consumer reports.

Plaintiff's Amended Complaint sets forth more than enough factual matter, which, accepted as true, states a facially plausible claim to relief because Plaintiff has pleaded factual allegations sufficient to allow the Court to draw the reasonable inference that Defendant has issued consumer reports, as defined by the FCRA.  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678–79. Accordingly, contrary to IRB's claims, Plaintiff has sufficiently pleaded that IRB furnishes consumer reports.

**B.    Plaintiff Sufficiently Pleads That IRB Is A Consumer Reporting Agency, Again Satisfying Rule 12(b)(6)**

Next, IRB contends that it is not a consumer reporting agency and is, therefore, not governed by the FCRA. (ECF 18-14 at 15.) IRB claims that "plaintiff has not adequately plead that IRB is a "consumer reporting agency," and "merely includes conclusory allegations." *Id*. Specifically, IRB attempts to characterize Plaintiff's allegation that "Defendant is a 'consumer reporting agency'" as merely a conclusory allegation, turning a blind eye to the factual allegations in Plaintiff's Amended Complaint, which clearly and directly support this statement. (ECF 18-14 at 20; ECF 15 ¶ 20.); *see Iqbal*, 556 U.S. at 664 (noting "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations.").

Without discussing Plaintiff's detailed allegations at all, IRB wants the Court to adopt the holding of *Tierney v. Advocate Health & Hospitals Corp*., 797 F.3d 449, 451–52 (7th Cir. 2015),

in support of its arguments that Plaintiff has failed to sufficiently plead that IRB is a CRA. (ECF 18-14 at 16.) That case, however, is nothing like this one. In *Tierney*, the allegations that the defendant was a CRA consisted of two sentences: the defendant "assembl[es] information on consumers" on a "cooperative nonprofit basis and/or for monetary fees" for the "purpose of furnishing Consumer Reports to third parties." *Id.* at 451–52. In contrast, here Plaintiff provides extensive, comprehensive allegations of IRB's business and conduct, which is more-than ample to plausibly plead it is a CRA and issues consumer reports. (ECF 15 ¶¶ 20–23, 39–60.) *Finlay*, 525 F. Supp. 3d at 980.

Based on her above well-pleaded allegations, the bulk of which go unchallenged by IRB, Plaintiff has specifically alleged each of the three prongs contained in the FCRA's definition of a CRA and offered by the *Tierney* court—the legal authority that IRB, itself, offered in support of its claims. *Tierney*, 797 F.3d at 451. Accordingly, IRB's argument positing that Plaintiff's Amended Complaint offers merely conclusory allegations falls flat. In reality, Plaintiff's Amended Complaint contains more-than-sufficient factual allegations—which must be accepted as true— that plausibly allege that, in fact, IRB is a consumer reporting agency. *See Tierney*, 797 F.3d at 451; *see also Finlay*, 525 F. Supp. 3d at 980.

Plaintiff's Amended Complaint sets forth more than enough factual matter, which, accepted as true, states a facially plausible claim to relief because Plaintiff has pleaded factual allegations sufficient to allow the Court to draw the reasonable inference that Defendant is a consumer reporting agency, as defined by the FCRA. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678-79. Accordingly, contrary to IRB's arguments, Plaintiff has sufficiently pleaded claims that satisfy Rule 12(b)(6).

## IV.    The Communications Decency Act Does Not Shield CRAs Like Defendant From FCRA Liability

Relying on inapplicable, dated authority, IRB asks the Court to place IRB in the same category as websites like Facebook or Reddit, where individuals go to post things that then appear on the internet through those websites. But IRB is not Facebook nor anything close—it is a seller of information that it seeks out, obtains, and then provides to users of its cite for money. (ECF 1 ¶¶ 40–44, 47, 49, 54, 61–67.) IRB reaches this conclusion without discussing the seminal decision of the Fourth Circuit, *Henderson v. Source for Public Data, L.P.*, 53 F.4th 110, 117 (4th Cir. 2022), which rejected the identical defense by a CRA in the precise context as this case. Plaintiff signaled her intention to rely on this case in her Amended Complaint (¶ 62), yet IRB did not address *Henderson* at all in its brief.[2] More significantly, IRB does not cite a single case in which FCRA claims were pleaded and the court concluded that CDA immunity saved a defendant from those claims. That is because IRB cannot cite such a case. No court has found in favor of a defendant on CDA immunity in the FCRA context. That goes for cases at the pleadings stage, like this one, or ones in which discovery has occurred. That should tell the Court all it needs to know about how the Communications Decency Act ("CDA") defense should turn out. Even examining IRB's discussion of the supposed application of the CDA, however, shows IRB is not entitled to CDA immunity.

### A.    IRB Has Not Shown It Is A Provider Of An Interactive Computer Service

IRB devotes one sentence to this aspect of the analysis: "IRB falls squarely within the definition of an 'interactive computer service' because it provides access by multiple users to a

---

[2] While IRB will no doubt argue that *Henderson* is not binding authority, it has not cited any Second Circuit case that applied the CDA to an alleged CRA. (ECF 18-14 at 16–20.)

computer server to search countless records," and cites generally to its declaration in support of its Motion. (ECF 18-14 at 18.) This is not enough to establish this element of the CDA in IRB's favor.

Courts considering this element demand that defendants show, "beyond dispute," that this element is met from the face of plaintiff's complaint. *Forrest v. Meta Platforms, Inc*., No. 22-cv-03699-PCP, 2024 WL 3024642, at *3 (N.D. Cal. June 17, 2024). IRB comes nowhere close, failing to discuss the allegations in Plaintiff's Amended Complaint at all. (ECF 18-14 at 18.) Instead, IRB relies on its declarant, but that falls far short of proving anything on this element.

IRB's declarant does not discuss at all how IRB's website works, how anyone accesses the information present there, or whether it even uses the "computer server" it claims to. (*See generally* ECF 18-1.) The bulk of the declaration is devoted to explaining steps IRB supposedly takes to avoid FCRA governance (¶¶ 8–13); things On Point did wrong (¶¶ 14–34); and IRB's claimed lack of fault for Plaintiff losing out on the job at Pomerantz (¶¶ 35–40). (ECF 18-1.) Nowhere does IRB's witness explain how IRB qualifies as an interactive computer service.

The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). IRB discusses none of these things in its brief, apparently expecting the Court to find the element met on just one line of argument from IRB. The statutory definition is more nuanced, however, and the failure of IRB to even discuss, let alone prove, this element, dooms IRB's CDA defense out of the gate. The Court could end its analysis here, and find the CDA inapplicable to Plaintiff's claims.

**B.**    **IRB Has Not Shown That The Information In IRB's Reports Is Provided By An Information Content Provider Other Than IRB**

Again, without addressing or discussing any on-point caselaw, IRB seeks overcome Plaintiff's well-pleaded allegations with blanket statements about how its business works. (ECF 18-14 at 18–19.) Leaving aside that IRB cannot supplant Plaintiff's allegations in the Rule 12(b)(6) context, IRB has not shown that it is not "another information content provider" under Section 230(c)(1). In other words, just because others supply information to IRB, it can still be an "information content provider" that takes its conduct outside the ambit of the CDA.

The Act's grant of immunity depends on the publication solely of information "provided by *another* information content provider." 47 U.S.C. § 230(c)(1) (emphasis added). IRB is itself an "information content provider" if it is "'responsible, *in whole or in part*, for the creation or development'" of the information at issue. *Henderson*, 53 F.4th at 127 (emphasis added). The Second Circuit has held that an information content provider is a developer of third-party content if it "'directly and "materially" contributed to what made the content itself'" . . . "'illegal or actionable.'" *Force*, 934 F.3d at 68. The court in *Henderson* further explained that "where a company materially contributes to a message's unlawful content, that company stops being a mere 'intermediary' for another party's message. Instead, the company is adding new content to the message that harms the plaintiff." *Henderson*, 53 F.4th at 128. While these cases do not delve into the definition of "creation" in this context, there does not appear to be a genuine reason to look beyond the dictionary definition: "the act of making, inventing, or producing."[3]

IRB does not grapple with the specifics of these statutory definitions at all, instead merely stating that it does not know what its vendors do with data they collect or how they collect it. (ECF

---

[3] https://www.merriam-webster.com/dictionary/creation.

18-14 at 19.) That is simply not enough to garner CDA protection, particularly where Plaintiff has alleged that IRB creates and develops content, and those allegations must be taken as true at this procedural posture.

First, Plaintiff plainly alleges that IRB creates content for its website:

43. Defendant takes the data it retrieves or purchases and transforms it into a proprietary, summary format that removes pertinent information in the original records, summarizes it, and adds certain indecipherable codes that are particular to Defendant and its reporting format.

44. In addition, discovery will show that Defendant actively curates the records to match – in Defendant's own view – the request information provided by the employer. Defendant's customers do not merely search for specific records, but instead ask a general question: "Are there any criminal convictions or civil judgments anywhere that match this applicant, with this personal identifying information?"

45. Because that information often does not match or does not provide sufficient information to actually match records, Defendant affirmatively sorts, manipulates and infers information to adapt data results to the requests received.

46. Defendant essentially rewrites court records to its own, original entries into the reports it creates.

(ECF 15.) Though Plaintiff does not concede that it would be appropriate, IRB had the opportunity to explain how these allegations are inaccurate or do not lend to a decision that IRB "creates" the information it offers for sale. (*See* ECF 18-14 at 18–19.) Yet, IRB did nothing. Since these unchallenged allegations are enough to claim that IRB made, invented, or produced the information it offers for sale, the Court should conclude that IRB is an information content provider under Section 230(c)(1).

Should the Court continue and analyze whether IRB develops the information it offers, the same conclusion results. Plaintiff's unchallenged allegations include those just above, plus:

40. Second, Defendant purchases and assembles its data from "state, local, and federal court information delivered efficiently and confidently."

41. Defendants [sic] then parse that information, altering it into an original, proprietary format such that it can more-easily meet what it perceives to be its clients' needs: "Each search fits under six main categories: People, Assets, Businesses, Courts, Licenses, and Phones. Coverage for IRB's information stretches across fifty states and all US territories. Within IRBsearch, each search and report displays a coverage map detailing the information provided."

49. Defendant's website, shown above, details the variety of information it permits users to purchase and view, all of which is parsed and presented in a more-limited fashion than simply a snapshot of that appears in the original records.

(ECF 15 (footnotes omitted).) There can be no questions that these allegations place IRB squarely within the Second Circuit's material-contribution test for whether the defendant claiming CRA immunity developed information. *Force* confirms as much, as there the court held that the CDA shielded Facebook from the challenged conduct in part because "Facebook does not edit (or suggest edits) for the content that its users—including Hamas—publish." *Force*, 934 F.3d at 69–70. Here, however, as set forth above, Plaintiff alleges IRB *does* edit the information it offers, meaning it materially contributes to the content it sells. *Id.*

IRB does not argue anything to alter this reality. Instead, it simply points to its unnamed outside vendors and argues that it "does affirmatively seek any information for any customer." (ECF 18-14 at 19.) But affirmatively seeking information is not the test of whether IRB is itself an information content provider under § 230(c)(1), and IRB does not cite any case that supports its novel argument. Should the Court even reach this aspect of the analysis, it should decide it in Plaintiff's favor and conclude the CDA does not shield IRB from FCRA liability.

C.    **Most Of Plaintiff's Claims Do Not Treat IRB As The Publisher Or Speaker**

Assuming the Court reaches the publication aspect of Section 230, IRB again gives the analysis short shrift by focusing on just two of the 168 paragraphs in Plaintiff's Amended Complaint. (ECF 18-14 at 19 (quoting ECF 15 ¶¶ 15, 160).) By IRB's measure, it is a publisher

because Plaintiff has used the word twice in her Amended Complaint and IRB is a "a reseller of information exclusively provided by third-party data vendors." (*Id.*) IRB is wrong, again.

Plaintiff's claims under §§ 1681e(b), 1681k, and 1681g do not depend on any information being published. They instead focus on: (1) IRB's internal failures (§§ 1681e(b) and 1681k); and (2) IRB *not* providing Plaintiff with a full-file disclosure when she requested it (§ 1681g). (ECF 15 ¶¶ 120–23, 135–39, 154–55.) The *Henderson* court reached just this conclusion as to a § 1681g claim, while also questioning whether the CDA would apply to claims under §§ 1681e(b) and 1681k. *Henderson*, 53 F.4th at 124–26. *Henderson* is not alone. *Homeaway.com, Inc. v. City of Santa Monica*, No. 2:16-cv-06641 ODW (AFM), 2018 WL 1281772, at *5 (C.D. Cal. Mar. 9, 2018) ("Numerous courts have recognized that liability based on non-publishing conduct is not entitled to CDA protection."). IRB does not cite to any case applying the CDA to bar claims under the FCRA, probably because the only case to address (and reject) that question, *Henderson*, is on-point and not distinguishable. The Court should therefore conclude that this case mirrors *Henderson*, and so the CDA does not bar the claims Plaintiff presses under §§ 1681e(b), 1681k, and 1681g.

### D.    IRB Has Not Shown, Nor Can It Show, That It Has Met Other Obligations The CDA Imposes Upon Interactive Computer Services

IRB confirms the CDA does not apply to its business by failing to explain how it meets specific obligations the CDA imposes. The Act reads in part:

**(d) Obligations of interactive computer service**

A provider of interactive computer service shall, at the time of entering an agreement with a customer for the provision of interactive computer service and in a manner deemed appropriate by the provider, notify such customer that parental control protections (such as computer hardware, software, or filtering services) are commercially available that may assist the customer in limiting

> access to material that is harmful to minors. Such notice shall
> identify, or provide the customer with access to information
> identifying, current providers of such protections.

47 U.S.C. § 230(d). While Plaintiff does not concede that it would be appropriate for IRB to append

other evidence to its Reply, IRB makes no argument or offers no proof at all that it even attempts

to meet this requirement.

These facts confirm that IRB's CDA defense is entirely contrived for purposes of litigation.

IRB never knew of the CDA until its Motion, as confirmed by the absence of discussion of the

notice requirement in its opening brief. All IRB can really say as to this point is that it does not

matter, and while it is not an element of the CDA immunity, the lack of the CDA notification is a

stark reminder that IRB never thought about the application of the statute until it was sued.

To be clear, Plaintiff does not assert that failing to provide notification opens IRB up to

independent liability under the CDA. Plaintiff merely points out that a defendant that is

comfortable blanketing the Rule 12(b)(6) record with improper evidence would have included this

additional point about notification if the notification in fact existed. Since it plainly does not, the

Court should conclude that IRB is not of the type to which CDA immunity applies.

## CONCLUSION

For the foregoing reasons, IRB has not shown a valid ground to dismiss any of Plaintiff's

claims. The Court should therefore deny IRB's Motion to Dismiss in its entirety.

Dated: Brooklyn, New York
        August 16, 2024

Respectfully submitted,

*/s/ Brian Bromberg*
Brian L. Bromberg

Attorneys for Plaintiff

Brian L. Bromberg
Bromberg Law Office, P.C.
352 Rutland Road, #1
Brooklyn, NY 11225
Tel: 212.248.7906 | Fax: 212.248.7908
Email: brian@bromberglawoffice.com

Leonard A. Bennett
        (*pro hac vice forthcoming*)
Craig C. Marchiando
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
craig@clalegal.com

Brandon J. Hill (*pro hac vice*)
Wenzel, Fenton, Cabassa, P.A.
1110 N. Florida Ave, Suite 300
Tampa, FL 33602
Tel: (813) 337-7992
Fax: (813) 229-8712
Email: bhill@wfclaw.com

**Certificate of Service**

I hereby certify that on this date a copy of the foregoing document was electronically filed using the Court's CM/ECF system, which will automatically send copies of same to counsel of record below:

Brian Lewis Bromberg, Esq.

Jeffrey Alan Carlino, Esq.

Brandon J. Hill, Esq.

Craig Carley Marchiando, Esq.

Alice Jean Cunningham, Esq.

Dated: Brooklyn, New York
        August 16, 2024

/s/ Brian L. Bromberg
Brian L. Bromberg