UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHLEEN FOLEY, *individually and on behalf of all others similarly situated,*<br><br>                                Plaintiff,<br><br>                    -v.-<br><br>IRBSEARCH, LLC,<br><br>                                Defendant. | 24 Civ. 1303 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Kathleen Foley ("Plaintiff") maintains that she lost a job opportunity because dated and inaccurate consumer credit information was provided by Defendant IRBsearch, LLC ("Defendant") to her prospective employer. What is more, after the job rejection, Plaintiff claims that she was stonewalled in her efforts to determine what information Defendant had in fact disclosed. In consequence, Plaintiff brought the following lawsuit, alleging, on behalf of herself and all others similarly situated, violations of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681-1681x, and in her individual capacity, a common-law claim for defamation.

Before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint pursuant to Rules 12(b)(1), 12(b)(6), 12(b)(7), and 19 of the Federal Rules of Civil Procedure. For the reasons set forth in the remainder of this Opinion, the Court grants in part and denies in part Defendant's motion to dismiss. In particular, the Court sustains Plaintiff's various FCRA claims but dismisses her defamation claim.

**BACKGROUND**[1]

**A.     Factual Background**

In 2023, Plaintiff applied for a legal assistant position at non-party Pomerantz, LLP ("Pomerantz").  (AC ¶¶ 22, 68, 75).  As part of its hiring processes, Pomerantz conducts background checks that are considered in making employment decisions.  (*Id.* ¶ 76).  According to Plaintiff, during her application process, Defendant sold Pomerantz a report about Plaintiff that included "inaccurate and stale" information, including that Plaintiff has outstanding tax liens and judgments against her and that she filed for Chapter 7 bankruptcy in 2004.  (*Id.* ¶¶ 4, 17, 68, 83).  Plaintiff was not notified when Defendant furnished that information to Pomerantz.  (*Id.* ¶¶ 6, 114).  Pomerantz subsequently refused to hire Plaintiff.  (*Id.* ¶¶ 23, 68).  Plaintiff alleges that it was because of the "erroneous consumer report" produced by Defendant that she "was left jobless and humiliated."  (*Id.* ¶ 85).

In October 2023, after losing the job opportunity, Plaintiff requested a file disclosure from Defendant, so that she could "get to the bottom of the

---

[1]     This Opinion draws its facts from the Amended Complaint ("AC" (Dkt. #15)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court also references the Declaration of Craig Melnick ("Melnick Decl." (Dkt. #18-1)) and one of its exhibits, the report allegedly prepared by Defendant about Plaintiff, which report is incorporated by reference in the Amended Complaint (Melnick Decl., Ex. K).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #18-14); to Plaintiff's memorandum of law in opposition to the motion to dismiss as "Pl. Opp." (Dkt. #25); and to Defendant's reply memorandum of law in further support of its motion to dismiss as "Def. Reply" (Dkt. #26).

inaccuracies in the report" that was provided to Pomerantz.  (AC ¶ 87).  Here, too, Plaintiff faced rejection:

> We have reviewed your requests for a Full File Disclosure, as well as the request for a list of all companies that requested or received your report.  Our company policies unfortunately prohibit the dissemination of this information and we will not be able to provide you with any type of report or list at this time.

(*Id.*).  In particular, Defendant refused to provide the information it possesses about Plaintiff, the sources of that information, or a list of recipients of that information.  (*Id.* ¶ 88).

Plaintiff alleges that Defendant, a limited liability company with its principal place of business in Florida, "use[s] automated processes to webscrape criminal histories from court websites, or purchase[s] such records in bulk, and assigns them to specific consumers."  (AC ¶¶ 3, 19).  It then sells these records to customers, like Pomerantz.  (*Id.* ¶ 3).  According to Plaintiff, Defendant is a "consumer reporting agency" (or "CRA") under the FCRA "because [i] in exchange for compensation; [ii] Defendant[ ] regularly assemble[s] information on consumers; [iii] for the purpose of furnishing consumer reports; and [iv] by means of interstate commerce."  (*Id.* ¶ 38).

In the remainder of the Amended Complaint, Plaintiff provides additional support for her argument that Defendant meets the four criteria for CRA status.  As to the first, Plaintiff alleges that Defendant "offers at least three different methods to purchase its products — per transaction, by number of corporate users, and via flat rate."  (AC ¶ 39).  Second, as stated on

Defendant's website, Defendant purchases and assembles data from "state, local, and federal court information." (*Id.* ¶ 40).  Defendant "transforms [that data] into a proprietary, summary format that removes pertinent information in the original records, summarizes it, and adds certain indecipherable codes that are particular to Defendant and its reporting format." (*Id.* ¶ 43).  Third, Plaintiff alleges that Defendant obtains and assembles that information for the purpose of providing it to third parties and has actual knowledge that its customers use its website and the reports it generates for FCRA purposes, such as determining a consumer's eligibility for credit, insurance, or employment.  (*Id.* ¶¶ 47-48).  Indeed, Plaintiff alleges that "Defendant actively curates the records [it produces] to match — in Defendant's own view — the request information provided by the employer." (*Id.* ¶ 44).  Fourth, "Defendant utilizes multiple means of interstate commerce to sell [its] reports, which are disbursed to prospective employers around the nation." (*Id.* ¶ 50).  It also "obtains its public records from vendors, state agencies, and courthouses in all 50 states and then resells this information in all 50 states." (*Id.*).

## B.    Procedural Background

Plaintiff commenced this action by filing her initial complaint on February 21, 2024, in which she alleged four violations of the FCRA and a claim for defamation.  (Dkt. #1).  On April 19, 2024, Defendant filed a letter motion, arguing that the complaint should be dismissed because (i) Defendant is not a consumer reporting agency that issues consumer reports, and therefore is not regulated by the FCRA, and (ii) Plaintiff failed to join On Point

Investigations ("On Point"), which Defendant claimed is a necessary party to this action. (Dkt. #11). Plaintiff consented to the filing of a pre-answer motion to dismiss. (Dkt. #12). In view of the parties' agreement to proceed to motion practice, the Court waived its standard pre-motion conference requirement, granted Defendant's request to file a motion to dismiss, and set a briefing schedule that included a period of time for Plaintiff to consider whether she wished to amend her complaint. (Dkt. #13).

In accordance with the Court's briefing schedule, on May 28, 2024, Plaintiff filed the Amended Complaint, the operative pleading in this case. (Dkt. #15). In the Amended Complaint, Plaintiff, on behalf of herself and the putative classes, alleges that Defendant willfully failed to comply with the FCRA by:

(i)  "refusing to provide all of the information it possessed about Plaintiff" to Plaintiff, and, more broadly, "regularly fail[ing] to provide" compliant disclosures, in violation of 15 U.S.C. § 1681g(a);

(ii)  failing to provide notice to Plaintiff, and other members of the purported class, when it furnished a report that included information that could "adversely affect an employer's hiring decision," in violation of 15 U.S.C. § 1681k(a)(1);

(iii)  "reporting [a] tax lien, judgment, and bankruptcy information [about Plaintiff] that antedated the report by more than seven years," and including "obsolete information … in the consumer reports it sold to third parties about the [other] putative class members," in violation of 15 U.S.C. § 1681c(a); and

(iv)  "failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports," in violation of 15 U.S.C. § 1681e(b).

(AC ¶¶ 119-157). The Amended Complaint also included an individual claim for defamation, alleging that the statements in the report "that Plaintiff has tax liens and judgments against her" were "defamatory as they tended to injure at least Plaintiff's reputation in the eyes of the community, or at least in the eyes of Plaintiff's potential employer." (*Id.* ¶¶ 158-168).

On June 28, 2024, Defendant filed its motion to dismiss the Amended Complaint. (Dkt. #18). On August 16, 2024, Plaintiff filed her opposition to the motion to dismiss. (Dkt. #25). On August 30, 2024, Defendant filed its reply in further support of its motion to dismiss. (Dkt. #26).

## DISCUSSION

### A.    The Court Has Subject Matter Jurisdiction to Consider Plaintiff's Claims

#### 1.    Applicable Law

##### a.    Rule 12(b)(1)

As noted, Defendant mounts both jurisdictional and pleading challenges to Plaintiff's claims. Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a claim for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *see also Daly* v. *Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.") (internal quotation marks omitted) (citing *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000))).

The Second Circuit has explained that "[a] Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based."

6

*Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)); *accord Lugo* v. *City of Troy, New York*, 114 F.4th 80, 87 (2d Cir. 2024). "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the … complaint and exhibits attached to it (collectively the 'Pleading'), the plaintiff has no evidentiary burden." *Carter*, 822 F.3d at 56. In that case, a court must determine whether the complaint and the exhibits attached thereto, accepted as true and construed in a plaintiff's favor, "plausibly suggest that the plaintiff has standing to sue." *Id.* (internal quotation marks omitted and alteration adopted). "Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, [by] proffering evidence beyond the Pleading." *Id.* at 57 (citing *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). Where such evidence "contradict[s] plausible allegations that are themselves sufficient to show standing," a plaintiff must "come forward with evidence of [her] own to controvert that presented by the defendant." *Id.* (citing *Exch. Nat'l Bank of Chi.* v. *Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). Where the extrinsic evidence presented by the defendant "is material and controverted," the court may make findings of fact in aid of its decision as to standing. *Id.*

### b. Standing

To bring a case or controversy within the subject matter jurisdiction of federal courts, a plaintiff must also have standing under Article III of the Constitution, which requires a "personal stake in the case." *TransUnion LLC* v.

*Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks and citation omitted). Article III standing requires a plaintiff to show "[i] an injury in fact, [ii] a causal connection between that injury and the conduct at issue, and [iii] a likelihood that the injury will be redressed by a favorable decision." *Maddox* v. *Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted)). Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Fac.* v. *N.Y.U.*, 11 F.4th 68, 76 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Lujan*, 504 U.S. at 561).

"To demonstrate injury in fact, a plaintiff must show the invasion of a [i] legally protected interest that is [ii] concrete and [iii] particularized and [iv] actual or imminent, not conjectural or hypothetical." *Maddox*, 19 F.4th at 62 (quoting *Strubel* v. *Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016)). In *TransUnion*, the Supreme Court expounded on Article III's requirement that a "plaintiff's injury in fact be 'concrete' — that is, 'real, and not abstract.'" 594 U.S. at 424 (quoting *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 340 (2016)). Tangible harms, including "monetary harms," are among those that "readily qualify as concrete injuries under Article III." *Id.* at 425.

With particular respect to injuries arising out of a defendant's violation of a statute, the Supreme Court explained that courts may not assume that the existence of a statutory prohibition or obligation automatically elevates that

8

prohibition or obligation to a harm that is concrete under Article III. *See TransUnion*, 594 U.S. at 424-26. "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's [statutory] violation …, and (ii) a plaintiff's suffering concrete harm because of the defendant's [statutory] violation." *Id.* at 426-27. "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis omitted); *see also Harty* v. *W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) ("[A] plaintiff has standing to bring a claim for monetary damages following a statutory violation only when [she] can show a current or past harm beyond the statutory violation itself.").

### c.    The FCRA

"The FCRA creates a private right of action against credit reporting agencies for the negligent … or willful … violation of any duty imposed under the statute." *Neclerio* v. *Trans Union, LLC*, 983 F. Supp. 2d 199, 208 (D. Conn. 2013) (quoting *Casella* v. *Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995)). The FCRA defines "consumer reporting agency" to include:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).  "The meaning of 'for the purpose of' in § 1681a(f) is …

plain:  A 'consumer reporting agency' is an entity that intends the information

it furnishes to constitute a 'consumer report.'"  *Kidd* v. *Thomson Reuters Corp.*,

925 F.3d 99, 104 (2d Cir. 2019) ("*Kidd II*") (citing *Williams* v. *Wilmington Trust*

*Co.*, 345 F.3d 128, 133 (2d Cir. 2003)).  Further, where an entity meets the

statutory definition of a "consumer reporting agency," that "entity may not

escape regulation as [such] by merely disclaiming an intent to furnish

'consumer reports.'"  *Kidd II*, 925 F.3d at 106-07.

In turn, a "consumer report" includes:

> any written, oral, or other communication of any
> information by a consumer reporting agency bearing on
> a consumer's credit worthiness, credit standing, credit
> capacity, character, general reputation, personal
> characteristics, or mode of living which is used or
> expected to be used or collected in whole or in part for
> the purpose of serving as a factor in establishing the
> consumer's eligibility for — [i] credit or insurance to be
> used primarily for personal, family, or household
> purposes; [ii] employment purposes; or [iii] any other
> purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).  "[E]mployment purposes" includes the use of a report

"for the purpose of evaluating a consumer for employment, promotion,

reassignment[,] or retention as an employee."  *Id.* § 1681a(h).

### 2.    Analysis

#### a.    The Court Has Subject Matter Jurisdiction over Plaintiff's FCRA Claims

The Amended Complaint asserts that this Court has federal question

jurisdiction over the instant case under Sections 1681n and 1681p of the

FCRA.  (AC ¶ 25 (citing 15 U.S.C. §§ 1681n, 1681p; 28 U.S.C. § 1331)).  In

10

response, Defendant argues that the Court does not have jurisdiction under the FCRA because Defendant "is not a consumer reporting agency and does not issue consumer reports" and, therefore, the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Def. Br. 7-13). Defendant supports this argument by referencing documents outside of the pleadings, which documents purportedly show that Defendant did not intend to furnish "consumer reports" for FCRA purposes, and in fact "takes affirmative steps to ensure that subscribers are not using the data acquired through [Defendant's] database for FCRA-regulated purposes."  (*Id.* at 10-11).

Significantly, however, whether Defendant qualifies as a "consumer reporting agency" or "CRA" is not a jurisdictional question, but rather is merely an element of the FCRA claim.  Accordingly, "[i]t is not a jurisdictional fact amenable to adjudication on a motion pursuant to Rule 12(b)(1)[.]"  *Ginorio* v. *Kenco Realty Mgmt. Corp.*, No. 22 Civ. 650 (CM), 2022 WL 825493, at *1 (S.D.N.Y. Mar. 18, 2022); *see also, e.g.*, *Torres* v. *United States*, 612 F. App'x 37, 41 (2d Cir. 2015) (summary order) ("Accordingly, although the district court was correct that the statute of limitations bars Torres's FTCA claim, that conclusion requires a dismissal on substantive, not jurisdictional, grounds. The district court's order was therefore technically incorrect insofar as it granted the government's motion to dismiss for want of jurisdiction [pursuant to Rule 12(b)(1)]."); *Da Silva* v. *Kinsho Int'l Corp.*, 229 F.3d 358, 365 (2d Cir. 2000) (rejecting argument that 15-employee requirement of Title VII was jurisdictional: "[The plaintiff's] ultimate failure to prove single employer status

11

is not a ground for dismissing for lack of subject matter jurisdiction or even for failure to state [a] claim; it is a ground for defeating her federal claim on the merits."); *Petty* v. *Goord*, No. 00 Civ. 803 (JSR), 2007 WL 724648, at *4 (S.D.N.Y. Mar. 5, 2007) (noting that because administrative exhaustion was not a jurisdictional requirement of the Prison Litigation Reform Act of 1995, "Rule 12(b)(1) is not an appropriate means to seek the dismissal of Petty's Eighth Amendment claim based upon his failure to exhaust" (collecting cases)).

Indeed, the two main cases cited by Defendant in support of its Rule 12(b)(1) argument are not cases in which a court dismissed for lack of subject matter jurisdiction.  (Def. Br. 9-13).  Rather, they are cases in which the courts dismissed FCRA claims at the summary judgment stage.  *See Kidd* v. *Thomson Reuters Corp.*, 299 F. Supp. 3d 400, 405 n.1, 406 (S.D.N.Y. 2017) ("*Kidd I*") (dismissing FCRA claims at the summary judgment stage because the "totality of the circumstances compel[led] the Court to conclude" that defendant was not a consumer reporting agency), *aff'd*, 925 F.3d 99 (2d Cir. 2019); *Zabriskie* v. *Fed. Nat'l Mortg. Ass'n*, 940 F.3d 1022, 1030 (9th Cir. 2019) (determining that defendant was not a consumer reporting agency and reversing the district court's decision denying defendant's motion for summary judgment).

In sum, the Court agrees with Plaintiff that Defendant "is conflating the issue of whether a federal court has jurisdiction under Article III with the issue of whether [Defendant] is liable under the FCRA."  (Pl. Opp. 10).  *See also Da Silva*, 229 F.3d at 361 ("Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the

defendant bound by the federal law asserted as a predicate for relief — a merits-related determination." (quoting 2 MOORE'S FEDERAL PRACTICE § 12.30[1], at 12-36 (3d ed. 2000))).  At this stage of the case, and as discussed *infra*, Plaintiff has sufficiently alleged that Defendant is a consumer reporting agency. *See Kidd I*, 299 F. Supp. 3d at 405 n.1 (distinguishing case from *Landry* v. *Time Warner Cable, Inc., & Thompson Reuters Corp.*, No. 16 Civ. 507 (SM), 2017 WL 3444825 (D.N.H. Aug. 9, 2017), wherein the court denied a motion to dismiss FCRA claims without addressing the statutory definition of consumer reporting agency, "perhaps because, arising on a motion to dismiss, [rather than on summary judgment,] the Court was obligated to accept as true the facts alleged in the complaint").

### b.    Plaintiff Has Standing to Bring Her Claims

Further, Plaintiff has sufficiently pleaded standing, as "is required for subject matter jurisdiction." *James* v. *Willis*, No. 21-501, 2022 WL 481812, at *1 (2d Cir. Feb. 17, 2022) (citing *Strubel*, 842 F.3d at 187).  "To recover for a FCRA violation in federal court, Plaintiff must demonstrate more than just Defendant's contravention of FCRA because 'in suits for damages plaintiffs cannot establish Article III standing by relying entirely on a statutory violation.'" *Grauman* v. *Equifax Info. Servs., LLC*, No. 21 Civ. 6197 (MKB), 2023 WL 12043609, at *5 (E.D.N.Y. Mar. 31, 2023) (quoting *Maddox*, 19 F.4th at 64). Rather, a plaintiff must allege that she (i) "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (ii) "that the injury was likely

caused by the defendant"; and (iii) "that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423.

Here, Plaintiff has alleged an injury in fact, namely, that Defendant provided a report to the law firm where Plaintiff was applying to work that was "rife with inaccuracies and errors" and did not give Plaintiff contemporaneous notice such that Plaintiff could correct inaccuracies in the report, resulting in Plaintiff losing the opportunity to work at the firm; and afterward, refused to provide Plaintiff with her full file.  (AC ¶¶ 68, 79, 80-87, 90-91, 153).  The alleged loss of that job opportunity is sufficiently concrete and particularized. Indeed, in the FCRA context, courts have found qualifying injuries in more attenuated settings than are alleged here.  *See, e.g.*, *Finlay* v. *MyLife.com Inc.*, 525 F. Supp. 3d 969, 977-78 (D. Minn. 2021) (determining that plaintiff had plausibly alleged a concrete injury in fact where he alleged that individuals seeking to employ him had consulted his profile on defendant's website, which included false consumer information about him, but did not allege that he lost a specific job opportunity).  Further, Plaintiff has plausibly alleged that the injury was likely caused by Defendant.  Plaintiff alleges that Defendant's report included obsolete and inaccurate information, which made Plaintiff appear financially irresponsible to her potential employer.  (AC ¶ 84).  It is further alleged that after receiving that report, Pomerantz decided not to hire Plaintiff. (*Id.* ¶¶ 23, 68).  Therefore the "harms alleged in the [Amended] Complaint] are fairly traceable to [Defendant's] conduct."  *See Finlay*, 525 F. Supp. 3d at 979. Finally, the alleged harms would likely be redressed by judicial relief, namely

14

an award of damages.  Accordingly, Plaintiff has sufficiently alleged Article III standing.  The Court rejects Defendant's argument that the Court lacks subject matter jurisdiction to consider whether Plaintiff has sufficiently pleaded claims for violations of the FCRA, and now proceeds to consider the adequacy of the pleadings.

## B.    Plaintiff Has Sufficiently Pleaded Claims for Violations of the FCRA

### 1.    Applicable Law

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

A court adjudicating a motion to dismiss under Rule 12(b)(6) "may review only a narrow universe of materials." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This narrow universe includes "facts stated on the face of the complaint" and "documents appended to the complaint or incorporated in the complaint by reference." *Id.* (internal quotation marks omitted); *accord United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). In resolving the instant motion, the Court considers the Amended Complaint and the report generated by Defendant regarding Plaintiff, which is incorporated by reference in the Amended Complaint. (*See* Melnick Decl., Ex. K).

### 2.    Analysis

Defendant contends in the alternative that the Amended Complaint must be dismissed because its allegations "are conclusory because they are based on the false premise that Defendant is a consumer reporting agency … that issues 'consumer reports' and is governed by the [FCRA]." (Def. Br. 13-16). But Defendant is merely repurposing its jurisdictional argument, likening this case to *Kidd I* because Defendant takes affirmative steps to deter use of its reports for FCRA purposes. (*Id.* at 14-15). The only additional authority Defendant puts forth is *Tierney* v. *Advocate Health and Hospitals Corporation*, 797 F.3d 449 (7th Cir. 2015). (*Id.* at 16). Summarizing the case, Defendant explains that:

> in *Tierney*, the [Seventh] Circuit affirmed the district court's dismissal pursuant to [Rule] 12(b)(6) on the basis that the plaintiffs failed to plausibly allege that the reasonable-procedures provision set forth under the FCRA under 15 U.S.C. § 1681e(a) "applie[d] in the first

> place, which includes, for a start, properly pleading that
> [defendant wa]s a 'consumer reporting agency.'"

(*Id.* at 16 (quoting *Tierney*, 797 F.3d at 451)).  As discussed, under the FCRA, a

consumer reporting agency is "any person which, [i] for monetary fees, dues, or

on a cooperative nonprofit basis, [ii] regularly engages in whole or in part in the

practice of assembling or evaluating consumer credit information or other

information on consumers [iii] for the purpose of furnishing consumer reports

to third parties, and [iv] which uses any means or facility of interstate

commerce for the purpose of preparing or furnishing consumer reports."  15

U.S.C. § 1681a(f).

The plaintiffs in *Tierney* "successfully plead[ed] the second prong of the

statutory definition" by stating that the defendant regularly assembled patients'

personal and medical information, including names, social security numbers,

and health insurance information.  797 F.3d at 452.  But they did not

successfully allege prong one, because the plaintiffs did not claim that the

defendant was paid for assembling that information.  *Id.*  Further, "[t]he

plaintiffs' allegations also fail[ed] the third prong of the statutory definition,"

because although the defendants sent information to third parties — namely,

insurers, "arguably ... to determine eligibility for insurance coverage" — that

information "concern[ed the defendant]'s experiences with its own patients."

*Id.*  Such reports were excluded from the definition of "consumer reports" in

that they were "report[s] containing information solely as to transactions or

experiences between the consumer and the person making the report."  *Id.*

(quoting 15 U.S.C. § 1681a(d)(2)(A)(i).  After considering the allegations in the complaint, the Seventh Circuit concluded that the plaintiffs had not plausibly alleged that the defendant was a consumer reporting agency, and held that the FCRA claims were properly dismissed by the district court.  *Id.* at 453-54.

*Tierney* is distinguishable from the instant case, because here, Plaintiff has sufficiently alleged that Defendant is a consumer reporting agency.  The Court considers each of the statutory elements in turn.

*First*, Plaintiff has sufficiently alleged that Defendant acts in exchange for compensation.  In the Amended Complaint, Plaintiff states that Defendant "receives compensation from its customers" and on its website, "offers at least three different methods to purchase its products — per transaction, by number of corporate users, and via flat rate."  (AC ¶ 39).  Further, Plaintiff alleges that Defendant sold such a report to her potential employer in 2023, and sold other reports to other customers.  (*Id.* ¶¶ 3, 22, 68).

*Second*, Plaintiff has sufficiently alleged that Defendant regularly assembles or evaluates information on consumers.  Specifically, Plaintiff alleges that Defendant "use[s] automated processes to webscrape criminal histories from court websites, or purchase[s] such records in bulk, and assigns them to specific consumers — largely based on name alone."  (AC ¶ 3).  Plaintiff further alleges that "Defendant obtains consumer information bearing on consumers' character, general reputation, personal characteristics and mode of living from a myriad of publicly available sources such as criminal and traffic records, social security number information, sex offender registries, etc."  (*Id.* ¶ 21).  On

its website, Defendant "touts its access to court records." (*Id.* ¶ 42). According to Plaintiff, "[a]fter acquiring consumer information from [those] sources, Defendant regularly assembles that information into a report[.]" (*Id.* ¶ 22). Those reports are put into a "proprietary, summary format" that "summarizes" the information in the original records and adds particular codes to the reports. (*Id.* ¶ 43).

*Third*, Plaintiff has sufficiently alleged that Defendant intended to furnish consumer reports to third parties. In the Amended Complaint, Plaintiff recognizes that Defendant's website includes disclaimers, which purport to distinguish the reports it generates from consumer reports. (AC ¶¶ 30, 30 n.2). But Plaintiff characterizes those disclaimers as "attempts [by Defendant] to avoid its obligations under the FCRA[.]" (*Id.* ¶ 27). As discussed, Plaintiff alleges that Defendant's reports constitute consumer reports because the information therein "bear[s] on consumers' character, general reputation, personal characteristics[,] and mode of living[.]" (*Id.* ¶ 21). And according to Plaintiff, Defendant actually sold such a report to Plaintiff's prospective employer, Pomerantz, for an employment purpose, namely, "considering Plaintiff for employment as a legal assistant." (*Id.* ¶¶ 21-22). Further, Plaintiff alleges that third parties also use Defendant's reports for other purposes governed by the FCRA — determining a consumer's eligibility for credit and insurance — and that Defendant has actual knowledge that its customers use its website and reports for those purposes. (*Id.* ¶¶ 47-48).

*Fourth*, Plaintiff has sufficiently alleged that Defendant used means of interstate commerce for the purpose of preparing or furnishing consumer reports. Plaintiff states that "Defendant obtains its public records from vendors, state agencies, and courthouses in all 50 states and then resells this information in all 50 states." (AC ¶ 50). Plaintiff quotes from Defendant's own website, which provides that "[Defendant's] information stretches across fifty states and all [U.S.] territories." (*Id.* ¶ 41). Finally, according to Plaintiff, Defendants' reports are then "disbursed to prospective employers around the nation." (*Id.* ¶ 50).

Ultimately, the Court recognizes that at the summary judgment stage, with a more complete record, Plaintiff's argument that Defendant is a consumer reporting agency may fail. *See, e.g., Kidd I*, 299 F. Supp. 3d at 408-09 (determining at summary judgment that defendant was not a consumer reporting agency); *Liberi* v. *Taitz*, No. 11 Civ. 485 (AJG), 2012 WL 10919114, at *6 (C.D. Cal. Mar. 16, 2012) (same). But drawing all reasonable inferences in Plaintiff's favor and assuming all well-pleaded factual allegations to be true, as the Court must in considering a motion to dismiss pursuant to Rule 12(b)(6), the Court finds that Plaintiff has adequately alleged claims under the FCRA.

## C.    The Court Denies Defendant's Motion to Dismiss the Case for Failure to Join On Point as a Party

### 1.    Applicable Law

Defendant also argues for dismissal based on Plaintiff's failure to join a third-party firm as a co-defendant in this case. Federal Rule of Civil Procedure 12(b)(7) provides that a party may assert the "failure to join a party under Rule

19" as a defense. *See* Fed. R. Civ. P. 12(b)(7). A district court is required to "dismiss an action where a party was not joined only if: [i] an absent party is required, [ii] it is not feasible to join the absent party, and [iii] it is determined 'in equity and good conscience' that the action should not proceed among the existing parties." *Garner* v. *Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 380 (S.D.N.Y. 2017) (quoting *In re Great Atl. & Pac. Tea Co.*, 467 B.R. 44, 58 n.9 (S.D.N.Y. 2012) (quoting *Republic of Philippines* v. *Pimentel*, 553 U.S. 851, 862-63 (2008)), *aff'd sub nom. Grocery Haulers, Inc.* v. *Great Atl. & Pac. Tea Co.*, 508 F. App'x 63 (2d Cir. 2013) (summary order)). In determining whether an absent party is "required," courts consider whether:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "Where a court makes a threshold determination that a party is necessary under Rule 19(a) and joinder of the absent party is not feasible for jurisdictional or other reasons, the court must then determine whether the party is 'indispensable' under Rule 19(b)." *Garner*, 260 F. Supp. 3d at 380 (quoting *Dunn* v. *Standard Bank London Ltd.*, No. 05 Civ. 2749 (DLC), 2006 WL 217799, at *2 (S.D.N.Y. Jan. 30, 2006)).

### 2. Analysis

As an initial matter, Defendant recognizes that Plaintiff alleges that Defendant sold a consumer report to Pomerantz. (Def. Br. 5). However, Defendant claims that Pomerantz "is not and never has been a customer of [Defendant]." (*Id.*). Rather, according to Defendant, On Point, a private investigation firm that subscribes to Defendant's services, conducted a search regarding Plaintiff and produced the report to Pomerantz. (*Id.*). Defendant claims that On Point took those actions "in knowing violation of the terms and conditions of [On Point's] contract with [Defendant]." (*Id.*). Further, Defendant states that, pursuant to that contract, "On Point agreed to defend and indemnify [Defendant] for disputes related to use of information received by On Point, furnished by or through [Defendant]." (*Id.* at 6). Accordingly, Defendant contends that On Point is a required party for two reasons: (i) On Point's absence will "impair [its] ability to protect its interests, given that it is required to defend and indemnify [Defendant] for claims arising from their use of [Defendant's] services" and (ii) "[t]his may leave [Defendant] facing inconsistent obligations or impacts from this lawsuit's outcomes, directly tying into On Point's indemnification responsibilities." (*Id.* at 6).

*First*, Defendant cannot assert that On Point's interest would be harmed if On Point is not deemed a required party. That is because "[c]ourts in this District have consistently found that a party named in the litigation cannot assert interests on an absent party's behalf." *Khatskevich* v. *Shapiro*, No. 23 Civ. 9160 (KPF), 2025 WL 833872, at *14 (S.D.N.Y. Mar. 17, 2025); *see also*

*Cont'l Cas. Co.* v. *Am. Home Assurance Co.*, No. 05 Civ. 7874 (LTS) (JCF), 2008 WL 1752231, at \*4 (S.D.N.Y. Apr. 14, 2008) ("[T]he absent party must be the one claiming the interest.  A party named in the litigation cannot assert the interest on the absent party's behalf." (internal citation omitted)).

*Second*, On Point's absence will not leave Defendant subject to a substantial risk of incurring multiple or otherwise inconsistent obligations by reason of the claimed interest.  Plaintiff's FCRA claims relate to Defendant's purported *statutory* obligations to provide disclosures, 15 U.S.C. § 1681g(a); to provide contemporaneous notice, *id.* § 1681k(a)(1); to refrain from publishing obsolete information, *id.* § 1681c(a); and to establish and follow reasonable procedures to assure maximum accuracy of information, *id.* § 1681e(b).  On Point is not the entity that is purportedly subject to those statutory requirements.  Further, to the extent that On Point is responsible for defending or indemnifying Defendant pursuant to the contract between those two entities, the possibility of contractual indemnification does not itself make On Point a required party.  *See USA Roof Masters, LLC* v. *Liberty Mut. Mid Atl. Ins. Co.*, 721 F. Supp. 3d 372, 377 (E.D. Pa. 2024) ("While pursuit of a claim for contribution or indemnification is a less convenient remedy for a defendant, that inconvenience does not render an absent insurer indispensable."), *reconsideration denied*, No. 22 Civ. 1813 (JMY), 2024 WL 1699563 (E.D. Pa. Mar. 20, 2024).  Accordingly, the Court denies Defendant's motion to dismiss under Rules 12(b)(7) and 19.

**D.    Defendant Has Immunity with Respect to Plaintiff's Defamation Claim, But Not Plaintiff's FCRA Claims**

**1.    Applicable Law**

According to Section 230 of the Communications Decency Act (the "CDA"), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This effectively

> shields a defendant from civil liability when [i] it is a "provider or user of an interactive computer service," as defined by § 230(f)(2); [ii] the plaintiff's claims "treat[ ]" the defendant as the "publisher or speaker" of information, *id.* § 230(c)(1); and [iii] that information is "provided by" an "information content provider," *id.* § 230(f)(3), other than the defendant interactive computer service.

*Force* v. *Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019) (third alteration in original). "[T]he text of Section 230(c)(1) should be construed broadly in favor of immunity." *Id.* (collecting cases). Section 230(c)(1) immunity is considered an affirmative defense. *Id.* at 57.

**2.    Analysis**

Defendant argues that it "should be shielded from liability under Section 230 of the CDA" because (i) it is a provider of an interactive computer service; (ii) Plaintiff's claims are based on information provided by another information content provider; and (iii) Plaintiff's claims treat Defendant as the publisher or speaker of that information. (Def. Br. 18-20). The Court finds that Defendant is immune from Plaintiff's defamation claim under Section 230(c)(1), but is not

immune from Plaintiff's FCRA claims. The Court addresses each element of Defendant's immunity defense in turn.

*First,* the Court finds that Defendant is an "interactive computer service." The CDA defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2). The term "has been construed broadly," *Saveene Corp.* v. *Remo*, No. 21 Civ. 399 (LGS), 2021 WL 4806380, at *3 (S.D.N.Y. Oct. 14, 2021) (citing *Ricci* v. *Teamsters Union Loc. 456*, 781 F.3d 25, 28 (2d Cir. 2015) (per curiam)), "and '[c]ourts typically have held that internet service providers, website exchange systems, online message boards, and search engines fall within this definition,'" *id.* (alteration in original) (quoting *FTC* v. *LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (collecting cases)). *See also United States* v. *EZ Lynk SEZC*, No. 21 Civ. 1986 (MKV), 2024 WL 1349224, at *10 (S.D.N.Y. Mar. 28, 2024) (finding that "Section 230 immunity is not reserved for social media platforms," and declining to speculate that Congress intended only to protect certain kinds of information when it defined "interactive computer service"). Defendant argues that it "falls squarely within" this definition because its website "provides access by multiple users to a computer server to search countless records." (Def. Br. 18 (citing Melnick Decl.); *see also* Melnick Decl. ¶ 3 ("IRB maintains a website which allows IRB's customers ... to access

25

a database of data compiled by third-party data vendors.")).  The Court agrees;
Defendant's website falls within the broad sweep of "interactive computer
service."

 *Second*, the Court finds that Plaintiff's claims are based on information
from another content provider.  Section 230 defines "information content
provider" as "any person or entity that is responsible, in whole or in part, for
the creation or development of information provided through the Internet or
any other interactive computer service."  47 U.S.C. § 230(f)(3).  As such, if
Defendant "was a creator or developer, even 'in part,' of the … content upon
which [Plaintiff's] claims rely, then [Defendant] is an 'information content
provider' of that content and is not protected by Section 230(c)(1) immunity."
*Force*, 934 F.3d at 68 (quoting 47 U.S.C. § 230(f)(3)).

 The Second Circuit uses the "material contribution" test to determine
whether a defendant is providing information from another content provider
(allowing for immunity) or is instead the "developer" of content (not allowing for
immunity).  *See id.* at 68-69.  According to this test, "[a]n interactive computer
service will be immune for content on its platform under Section 230 unless 'it
assisted in the development of what made the content unlawful,' thus
becoming an information content provider."  *Ratermann* v. *Pierre Fabre USA,
Inc.*, 651 F. Supp. 3d 657, 667 (S.D.N.Y. 2023) (quoting *LeadClick*, 838 F.3d at
174).  A party can be said to "develop" third-party content by, for example,
giving "specific instructions" to those parties, or by "encourag[ing] or advis[ing]
[them] to provide the specific actionable content that forms the basis for the

claim." *Force*, 934 F.3d at 69 (citing *LeadClick*, 838 F.3d at 176).  In *Force*, the Second Circuit found that "[m]erely arranging and displaying others' content to users of Facebook through [Facebook's] algorithms — even if the content is not actively sought by those users — [was] not enough to hold Facebook responsible as the developer or creator of that content."  *Id.* at 70 (internal quotation marks omitted and alterations adopted).  It reasoned that "making information more available [or 'usable'] is … an essential part of traditional *publishing*; it does not amount to 'developing' that information within the meaning of Section 230."  *Id.*

Like Facebook in *Force*, Defendant is not the developer of the content at issue.  Defendant's report on Plaintiff — which is incorporated by reference in the Amended Complaint — is essentially a compendium of third-party information.  (*See* Melnick Decl., Ex. K).  Plaintiff alleges that Defendant "transforms" the data it retrieves or purchases from third parties "into a proprietary, summary format that removes pertinent information in the original records, summarizes it, [ ] adds certain indecipherable codes that are particular to Defendant and its reporting format" (AC ¶ 43), and "rewrites court records to [put] its own original entries into the reports it creates" (*id.* ¶ 46).  All of this, according to Plaintiff, means that Defendant materially contributes to the content it sells.  (*See* Pl. Opp. 22).  However, the Court finds that Defendant's summarizing and rearranging of third-party information does not amount to materially contributing to it.  The report is a straightforward list of public records organized into categories such as "Address Summary,"

"Bankruptcy Records," and "Voter Registrations." (*See* Melnick Decl., Ex. K).
By compiling this report, Defendant merely makes third-party content more
available and usable, which "does not amount to 'developing' that information
within the meaning of Section 230." *Force*, 934 F.3d at 70.[2]

 *Third*, Defendant argues that Plaintiff's claims treat Defendant as the
publisher or speaker of information. Defendant's assertion of immunity rises
and falls on this third element, which the Court finds to vary by claim. The
Court agrees with Defendant that, for purposes of Plaintiff's defamation claim,
Plaintiff is treating Defendant as the publisher or speaker of third-party
information. However, for purposes of Plaintiff's FCRA claims, Plaintiff is not
treating Defendant as the publisher or speaker of third-party information.
Thus, Defendant is immune from Plaintiff's defamation claim under Section
230, but not from its FCRA claims.

---

[2] The Court parts company with the Fourth Circuit's conclusion in *Henderson* v. *Source for Public Data, L.P.*, 53 F.4th 110 (4th Cir. 2022), which Plaintiff cites to argue that Defendant materially contributed to the report (*see* Pl. Opp. 20). As an initial matter, the Court finds that *Henderson* is distinguishable. In *Henderson*, the Fourth Circuit found that the defendant's "own actions contributed in a material way to what made the content at issue … inaccurate and thus improper." 53 F.4th at 128. Specifically, it found that the defendant summarized criminal charges in a way that prevented the reader from seeing dispositions, including "stripping out the *nolle prosequi* disposition for [a plaintiff's] charges and adding its own misleading summaries." *Id.* By contrast, here, Plaintiff alleges that Defendant reported a 1998 civil judgment and a 2004 Chapter 7 bankruptcy that were outside the seven-year FCRA period but were nonetheless accurate. (AC ¶¶ 82-83). And although Plaintiff alleges that Defendant "reported an $11,000 civil eviction judgment from 2016" that "never resulted in an eviction or judgment" because "Plaintiff paid her debt to the landlord, resulting in a dismissal of the case" (*id.* ¶ 81), unlike in *Henderson*, Plaintiff does not allege that Defendant manipulated or edited the information about this judgment to make it inaccurate. Rather, Defendant is only alleged to have reported this judgment, which the original source (*i.e.*, a third party) might have inaccurately or incompletely reported.

"Section 230 does not define the term 'publisher,' but the Second Circuit, looking to the term's ordinary meaning, has concluded that it means 'one that makes public.'" *Ratermann*, 651 F. Supp. 3d at 667 (quoting *Force*, 934 F.3d at 65). "The courts' generally broad construction of Section 230(c)(1) in favor of immunity 'has resulted in a capacious conception of what it means to treat a website operator as the publisher … of information provided by a third party.'" *Force*, 934 F.3d at 65 (omission in original) (quoting *Jane Doe No. 1* v. *Backpage.com*, 817 F.3d 12, 19 (1st Cir. 2016)). "In assessing whether a plaintiff seeks to hold the defendant liable as a protected publisher, 'courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker.'" *Ratermann*, 651 F. Supp. 3d at 667 (quoting *LeadClick*, 838 F.3d at 175) (internal quotation marks omitted). The Second Circuit in *Force* found that the plaintiffs' attempt to hold Facebook liable for content posted by Hamas — *i.e.*, for providing "a forum" for Hamas — and for failing to delete content from Hamas members' Facebook pages fell "within the heartland of what it means to be the 'publisher' of information under Section 230(c)(1)." *Force*, 934 F.3d at 65. Furthermore, the Second Circuit held that "simply organizing and displaying content exclusively provided by third parties" is "an essential result of publishing" because publishers "must … decide what type and format of third-party content they will display." *Id.* at 66-67.

Beginning with Plaintiff's defamation claim — which is pleaded in the alternative, and which would likely be preempted if Defendant were determined

to be a CRA[3] — the Court treats Defendant as the publisher of third-party content.  Plaintiff alleges that "Defendant published to Plaintiff's prospective employer a report about Plaintiff that stated Plaintiff was financially irresponsible."  (AC ¶ 160).  Statements in Defendant's report on Plaintiff, including about tax liens and judgments against her, are alleged to be false.  (*Id.* ¶ 162).  A defamation claim based on publishing false statements provided by third parties is the quintessential claim that treats the defendant as the publisher of third-party content.  *See Ricci*, 781 F.3d at 28 (finding GoDaddy immune from liability for defamation for failing to remove an allegedly defamatory newsletter authored by a third party); *cf. La Liberte* v. *Reid*, 966 F.3d 79, 90 (2d Cir. 2020) (finding television personality not immune from liability for defamation where she was the author of allegedly defamatory social media posts).  Indeed, Plaintiff does not appear to contest that its defamation

---

[3]    If Defendant is indeed a CRA, then Plaintiff's defamation claim is likely preempted.  Section 1681h(e) of the FCRA provides that "no consumer may bring any action or proceeding in the nature of defamation … with respect to the reporting of information against any consumer reporting agency ['CRA'], any user of information, or any person who furnishes information to a consumer reporting agency, …. except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e).  Thus, "Section 1681h(e) preempts defamation claims against CRAs unless the alleged false information is furnished with malice or willful intent to injure the plaintiff."  *Thompson* v. *Equifax Info. Servs. LLC*, No. 20 Civ. 6101 (RPK) (ST), 2022 WL 2467662, at *10 (E.D.N.Y. Feb. 24, 2022).  This has been described as a "qualified immunity" afforded to CRAs against defamation claims that track FCRA violations unless the plaintiff can establish that the CRA acted with malice or willful intent to injure.  *See Ogbon* v. *Beneficial Credit Servs., Inc.*, No. 10 Civ. 3760 (PAE), 2013 WL 1430467, at *10 (S.D.N.Y. Apr. 8, 2013) ("Thus, defendants have 'qualified immunity against defamation actions,' which can only be overcome where plaintiff shows that defendants have acted with malice or willful intent." (quoting *Houston* v. *TRW Info. Servs., Inc.*, 707 F. Supp. 689, 695 (S.D.N.Y. 1989)).  Here, Plaintiff makes several allegations of willfulness regarding Defendant's alleged FCRA violations.  (*See, e.g.*, AC ¶¶ 98, 99, 131, 140, 149, 156).  Because the parties have not briefed the issue, and because Defendant's status as a CRA *vel non* will be determined later, the Court need not decide at this time whether Plaintiff's defamation claim is preempted.

claim treats Defendant as the publisher of third-party content.  (*See* Pl.

Opp. 22 ("*Most* Of Plaintiff's Claims Do Not Treat IRB as the Publisher or

Speaker" (emphasis added)); *id.* at 22-23 (arguing that "Plaintiff's claims under

§§ 1681e(b), 1681k, and 1681g do not depend on any information being

published," but making no mention of the defamation claim)).  Thus, the Court

finds that Defendant is entitled to immunity from liability under Section

230(c)(1) from Plaintiff's defamation claim regarding allegedly false statements

contained in the report, and it dismisses Plaintiff's defamation claim on this

ground.

    As for Plaintiff's FCRA claims, Plaintiff does *not* treat Defendant as the

publisher or speaker of information.  Plaintiff alleges that Defendant violated

several provisions of the FCRA by refusing to provide all the information it

possessed about Plaintiff in response to a request (AC ¶¶ 119-132); failing to

provide "at the time" notice (*id.* ¶¶ 133-141); and failing to ensure maximum

possible accuracy (*id.* ¶¶ 151-157).  Plaintiff also alleges that Defendant

"violate[d] the prohibition on publishing obsolete information in violation of"

§ 1681c(a)(2) of the FCRA.  (*Id.* ¶¶ 15, 142-150).  Although the latter allegation

(Count Three) includes the term "publishing," the gravamen of this claim (and,

indeed, of all Plaintiff's FCRA claims) is the violation of a statutory requirement,

not the publication of third-party content.  The FCRA prohibits CRAs from

including in consumer reports "[c]ivil suits, civil judgments, and records of

arrest that, from date of entry, antedate the report by more than seven years."

15 U.S.C. § 1681c(a)(2).  Any allegation that Defendant violated this provision

has nothing to do with the content of the obsolete record (here, "tax lien, judgment, and bankruptcy information that antedated the report by more than seven years" (AC ¶ 145)).  Thus, it is not a claim against Defendant *qua* publisher; rather, it is a claim against Defendant *qua* CRA, subject to this and other FCRA requirements aimed at providing consumers with certain kinds of information.  As Plaintiff's FCRA claims amount to allegations that Defendant violated these statutory requirements, Section 230 immunity does not apply.[4]

---

[4]    In so concluding, the Court again departs from the Fourth Circuit's reasoning in *Henderson*, on which Plaintiff relies.  (*See* Pl. Opp. 23).  In *Henderson*, the Fourth Circuit found that alleged violations of FCRA § 1681g (like Count One here (*see* AC ¶¶ 119-132)) did not seek to impose liability on the defendant as a publisher because the claim was "based on a failure to disseminate information about an individual to that same individual, not a third party."  53 F.4th at 124.  The Fourth Circuit distinguished this claim from alleged violations of FCRA §§ 1681e(b) (like Count Four here (*see* AC ¶¶ 151-157)) and 1681k(a) (like Count Two here (*see id.* ¶¶ 133-141)).  *Id.* at 125-26.  It determined that, because liability under both claims "depend[s] on inaccurate information," these claims "functionally impose liability on the defendant based on the information's impropriety."  *Id.* at 126.  The Fourth Circuit did not decide whether these claims treated the defendant as a publisher because it determined that the defendant created or developed the relevant information such that Section 230(c)(1) immunity could not apply.  *Id.* at 126-29.  However, the Court disagrees with the *Henderson* Court's reasoning insofar as it considered FCRA §§ 1681e(b) and 1681k(a) to hold CRAs liable for publishing third-party content rather than for their own conduct as CRAs.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.  The Court dismisses Plaintiff's claim for defamation, but leaves standing her claims under the FCRA.  The Clerk of Court is directed to terminate the pending motion at docket entry 18.  The parties are hereby ORDERED to meet and confer and submit a revised case management plan on or before **April 29, 2025**.

SO ORDERED.

Dated:     March 28, 2025
           New York, New York

_____
       KATHERINE POLK FAILLA
       United States District Judge

33